# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: J.C. Jr.**

**No. 13-0859** (Jackson County 13-JA-1)

**FILED**

**January 17, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Father, by counsel Erica Brannon Gunn, appeals the Circuit Court of Jackson County's order entered on August 1, 2013, terminating his parental rights to his child J.C. Jr. The West Virginia Department of Health and Human Resources ("DHHR"), by William P. Jones, its attorney, filed its response. The child's guardian ad litem, Laurence W. Hancock, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in declining to appoint a guardian ad litem to him, in denying his motion to disqualify the DHHR, in adjudicating him an abusing parent, in refusing to grant an additional improvement period, and in terminating his parental rights to J.C. Jr.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner has a history of mental illness and was put under the care of the DHHR's Division of Adult Protective Services ("APS") in or about August of 2010. In December of 2012, petitioner was hospitalized for mental health issues. On January 8, 2013, J.C. Jr. was born and within a week, the DHHR filed the underlying abuse and neglect petition based upon allegations that J.C. Jr.'s mother had previously had her parental rights to other children involuntarily terminated and that Petitioner Father was incapable of caring for J.C. Jr. due to his history of mental illness, hospitalization, and alcoholism. J.C. Jr. was placed into the custody of the DHHR's Child Protective Services ("CPS"). Petitioner waived his right to a preliminary hearing and, after an adjudicatory hearing, was adjudicated to be an abusing parent.

Petitioner's adjudicatory hearing was held over two days in February and March of 2013. At the February hearing, in response to petitioner raising concerns about a conflict of interest, the circuit court ordered the local APS and CPS to have no contact with each other regarding the case. At the March hearing, an APS supervisor testified to petitioner's mental health and opined that he could not care for the child by himself. A worker who supervised petitioner's visitation with J.C. Jr. testified that the visits did not go well, that he quickly got bored with the child, did not hold him very long, and referred to J.C. Jr. by inappropriate names. In its adjudicatory order, entered May 23, 2013, the circuit court found as follows:

1

[J.C. Jr.'s] health and welfare is harmed or threatened by the inability or capacity of [petitioner] to provide the infant with necessary food, clothing, shelter, supervision, and medical care. [The circuit court also found that petitioner] lack[ed] the necessary parenting skills, and is not competent to physically care for, protect, supervise, and psychologically support J.C., Jr., due to [petitioner's] intellectual and emotional incapacity and mental illness.

Accordingly, the circuit court adjudicated petitioner as an abusing parent.

The circuit court held a dispositional hearing over two days, wherein petitioner's psychiatrist testified regarding petitioner's mental health history, current diagnosis, and treatment regime. By order entered August 1, 2013, the circuit court terminated petitioner's parental rights and denied his motion for an improvement period. The circuit court found that petitioner lacks the mental capacity to independently care for J.C. Jr.; that services provided by the DHHR will not overcome his permanent mental deficiency; that petitioner has been diagnosed with schizoaffective disorder, which causes psychotic delusions and renders him unstable; and that petitioner's condition is further exacerbated by his noncompliance with the prescribed medication regime. The circuit court found no reasonable likelihood that the conditions of abuse or neglect could be corrected and that the DHHR had made reasonable efforts to assist with medical and psychiatric services to stabilize petitioner, but petitioner is unable to adequately and safely provide for J.C. Jr.'s needs.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues several assignments of error. First, petitioner argues that the circuit court impermissibly based its adjudication, denial of an improvement period, and termination of parental rights, on the fact that petitioner is under the care of APS. Regarding the factual basis for his adjudication, petitioner argues that the DHHR solely relied upon petitioner's relationship with APS to adjudicate him an abusing parent and that such a basis is insufficient. Petitioner also argues that his involvement with APS was used as the basis for denying a post-

2

adjudicatory improvement period. He states that he no longer needed APS services, that he had begun to be taught parenting skills, and that he testified to a willingness to fully participate in an improvement period. Petitioner argues that the circuit court did not properly consider less restrictive alternatives in terminating his parental rights because it relied too heavily on petitioner's APS involvement and because J.C. Jr. was placed with a relative. He also argues that the circuit court could have achieved permanence by granting guardianship and terminating only petitioner's custodial rights.

We find no merit to petitioner's arguments. A neglected child is one whose "physical or mental health is harmed or threatened by a present . . . inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care or education . . . ." W.Va. Code § 49-1-3(11)(A)(i). The circuit court adjudicated petitioner as an abusing parent because the evidence showed that he lacks the mental and emotional capacity to safely care for J.C. Jr. and because attempts at supervised visitation were unsuccessful. The basis for termination was not simply APS's involvement.

Petitioner's argument that he was entitled to an improvement period lacks merit. Pursuant to West Virginia Code § 49-6-12, a respondent parent bears the burden of proving that he or she will substantially comply with an improvement period. Consequently, the circuit court has the discretion to deny an improvement period if the circuit court finds that this burden has not been met. Further, this Court instructed circuit courts not to unnecessarily extend abuse and neglect proceedings when we held that

> ". . . courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In Re: R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, in part, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The record reflects that petitioner has an extensive history of difficulty meeting his own needs and that his interactions with J.C. Jr. did not go well, with petitioner calling the infant insulting names and showing little interest in the child.

The circuit court's decision to decline to select a less restrictive disposition is also supported by the record. West Virginia Code § 49-6-5(a)(6), in pertinent part, directs that circuit courts shall, "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent . . . ." In the instant case, the circuit court specifically found that petitioner "lacks the mental capacity to independently care for [J.C. Jr.] and that services provided by the [DHHR] will not overcome the permanent mental deficiency which renders [petitioner] incapable of exercising proper parenting skills." This finding is supported by extensive evidence, including expert testimony from a psychiatrist who testified that petitioner has schizoaffective disorder,

which causes psychotic delusions and renders petitioner psychiatrically unstable. The finding was also supported by evidence of petitioner's failure to have positive interactions with the child during the attempts at supervised visitation. Pursuant to West Virginia Code § 49-6-5(b)(6), this constitutes a situation where there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. For these reasons, the circuit court did not err in terminating petitioner's parental rights.

Next, petitioner argues that the circuit court erred in refusing to disqualify the DHHR due to petitioner being its client. Petitioner argues that the DHHR should have been disqualified due to a conflict between the APS, which provides services to petitioner, and the CPS, which brought the abuse and neglect petition in this case. Petitioner argues that the information in the petition was gathered from APS sources and the DHHR took a position adverse to its ward when it brought the petition, which necessitated disqualification. Petitioner cites no authority to support his claim that an investigating CPS worker cannot work in the same office as an abuse and neglect respondent's APS worker.[1] Additionally, the circuit court took steps to reduce any potential conflict of interest by directing there be no communication between CPS and APS. We find that the circuit court adequately addressed the potential for conflict and correctly denied petitioner's request that the DHHR be disqualified.

Finally, petitioner argues that the circuit court erred by failing to appoint a guardian ad litem for him, in addition to the counsel he was provided, pursuant to West Virginia Code § 56-4-10 and Rule 17 of the West Virginia Rules of Civil Procedure, because he was unable to assist his court-appointed counsel due to his incompetency. West Virginia Code § 56-4-10 requires the appointment of a guardian ad litem for any party to an action who is insane, while Rule 17 of the West Virginia Rules of Civil Procedure mandates that "[t]he court or clerk shall appoint a discreet and competent attorney at law as guardian ad litem for an infant, incompetent person, or convict not otherwise represented in an action . . . ." Here, it was not clear that petitioner was insane; he was not committed to a psychiatric institution at the time of the proceedings and, further, an APS worker testified that the DHHR planned to release him from its care. Additionally, petitioner was "otherwise represented" by appointed counsel from the beginning of the proceedings, so the circuit court was not required under Rule 17 to appoint a guardian ad litem. Petitioner did not offer any explanation or evidence in the record as to how he was unable to assist his appointed counsel. Thus, we find that petitioner was not entitled to a guardian ad litem because he was sufficiently represented by his appointed counsel.

For the foregoing reasons, we find no error in the decision of the circuit court and the termination of parental rights is hereby affirmed.

Affirmed.

---

[1] The only disqualifying exception in our abuse and neglect statutes requires the disqualification of an investigating CPS worker when the worker is related to the accused, child, or families involved in the abuse and neglect proceeding. W.Va. Code § 49-6A-9(b).

4

**ISSUED**: January 17, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II